Good morning. May it please the Court. My name is Michael Berg and I represent Guillermo Ortega, who is the appellant in this action. With the Court's permission, I will attempt to reserve two minutes of my time for rebuttal, and I will keep track of my time. Thirty years ago, the United States Supreme Court held in Mendoza, Lopez, that a defendant charged with illegal reentry has a due process right to challenge the validity of the removal order that is the predicate of the offense that the government is charging him. I'm going to run the risk of maybe asking the first question right away. My apologies. But I'm concerned about the practical aspects of this. From my reading of the record, he is to be released from jail in July of 2017. Yes, Your Honor. What exactly do you want? I mean, I'm concerned about the fact that he may be incarcerated, possibly illegally, and what the practical ramifications of that might be. If this case were to be remanded for whatever reasons, then he stays in jail. And I just wonder what it is as far as the matter you would like us to do in that context. Well, and Judge Block, I have to be completely candid with you. I'm not an immigration lawyer, so I cannot tell you exactly what would happen once his time had been served. But it's my understanding that he would continue to be detained. I don't understand the specific questions. And the question is, given the fact that his prison term runs out in July, and if we move, what do we do now in the sense that remanding for further hearings is only going to take until July, or what are we doing? Your Honor, I would say the Court has several options. I would say remanding for further hearings would probably be the last of the options that would be the most beneficial to Mr. Ortega. I believe that this Court can actually review the 1326D claim de novo with the materials that have been provided in the appendix to the opening brief that this Court could provide. What would that mean, except as to prejudice? Well, Your Honor, the government has briefed the issue of prejudice in their answering brief in this case, and we have responded to that. So that aspect of the claim is what we do. Well, we don't know. I mean, it looks like he had a criminal history. I don't know how extensive, but there were other, you know, apparently convictions on his record. And that's what, when it comes to prejudice, I'm just concerned maybe there would be some other avenue out there, even if your point is well taken here. Well, Your Honor, all that Mr. Ortega would have to establish is that there would be a plausible relief for him, not even probable relief for him, had this information been known to the immigration judge in 2001. And we have set forth in the brief some of those plausible claims. You suggested that we do make that prejudice determination as a matter of law as an appellate court. Yes, Your Honor. Because you would be reviewing de novo the decision or the actions of the District Court. No, Your Honor, I did not. But the District Court made an implicit ruling that the 1326D motion that Mr. Ortega was attempting to make pro se had nothing to do with his case. Can I ask a question? Has there been any attempt to mediate this case? And would it be of any assistance? We are always amenable to mediation. There has been no attempt to mediate it. There has been no attempt to mediate it. Well, it's an amazing, crazy story. Can I ask a question? What's your strongest argument that the panel may consider or motion the defendant raised pro se when the defendant was represented by counsel? Your Honor, the local rules for the District of Arizona permit a District Court judge, in his or her discretion, to allow a pro se defendant to make a pro se, to allow a defendant who is represented by counsel to make a pro se vote. It's entirely at the District Court's discretion. And if you look at the record in this case, Judge Collins' response to what Mr. Ortega was doing was not to say, Mr. Ortega, you're represented by counsel, let your counsel do his job. What he said was, tell me what you want me to know or tell me what the problem is. And Mr. Ortega, in remarkably accurate language, said, I have previously argued that I was deprived of due process. And he set forth as best he could pro se what the grounds for relief would be. And the District Court judge did not respond, I can't hear you. He said, what you're telling me is irrelevant to your case, which was incorrect. It was not irrelevant to his case. Whether we view it as the property raised before the District Court, or whether we view it under Strickland for ineffective assistance by not raising it, we still come down to the same issue of prejudice. How do we resolve that now seems to me to be a primary concern that at least I have. In your honor, again, I would submit that this court, based on the materials that have been submitted, could make an initial finding of prejudice. But if the court were uncomfortable in doing that, the only alternative would be to remand for further proceedings. The prejudice, to be specific, is about whether he would have gotten any relief, assuming he was eligible for it, if we determine, if, I mean, it seems to be conceded that the original IG was wrong when she said he had been convicted of an aggravated felony. That's right. So, with that concession, he may be eligible for some relief that he, she said he wasn't eligible for. So the question, or she did say he was eligible for. So the question becomes whether what I gather was a rather extensive criminal record, and particularly a record of coming back into the country time after time after he'd been deported, legally or illegally. Illegally we would say, yes. The question is whether, I mean, there's just not even a briefing about what the case law demonstrates about the likelihood of him getting relief under those circumstances. Two points of response, Your Honor. One is he doesn't have to show that he would have gotten any. I understand. Only plausibility, which is a minor, minor level to prove. And the other is the immigration judge did mention a 25-page record of criminal history. I'm not sure where that came from. And this court has filed under seal the pre-sentence report that was prepared in this case. So you would have us do all the, I'm just a little uncomfortable doing the fact-finding in terms of going through his PSR and trying to make a determination of whether or not that's going to entitle him for relief or cancellation of relief. Wasn't that what he was seeking in the first place? Well, he didn't, he came forward and was asking for a petition, if I recall correctly, for cancellation or removal. At this stage, though, Your Honor, that's what I understand. So the .IJ, the immigration judge said you're not eligible for cancellation or removal and then said all these probably wrong reasons for it. And then so he was, and then deported. So he was deported or removed, therefore, arguably improperly. Right. And so I'm just trying to figure out, and I guess maybe all my colleagues as well, how are we supposed to grant, I think the relief you're seeking, or I'm trying to figure out what's the relief you're seeking. Are we saying he's free and he can remain in the country indefinitely? Or what is it that you're seeking? No, Your Honor, we are seeking dismissal of the illegal reentry indictment in this case. We are only focused on the criminal aspect of what is happening in Mr. Ortega's life. All this Court would need to find in order to grant that relief is that he has shown a plausible argument that he might have gotten relief from an objective immigration judge. That's all you're asking? That's all that we are asking. And so we are focused solely on the criminal aspect and we seek dismissal of the indictment. And I could make that determination on a rather incomplete record in terms of the plethora of other alleged crimes he's committed. Well, Your Honor, just as the District Court would as well, by looking at the case. No, we're not. That's where we don't take over the role of the District Court, especially if there's going to be extensive discussions, and I'm saying this in fairness to your client, that we might not be aware of something. We see something in the record that needs to be highlighted to a judge in court. Well, Your Honor, I'm certainly not arguing against a remand for further proceedings for Mr. Ortega. That is, we are not arguing against that. But as Judge Block pointed out at the beginning, we are in somewhat of an awkward position that Mr. Ortega is set to be released in July of the coming year. So with the Court's permission, I've used all my time. If I may have some rebuttal, I'd appreciate it. Thank you. Well, you have a tough board to grow, I suspect, right? Yes, Your Honor. Why should this case not be remanded? Why defeat many, many obvious errors that the IJ made in that decision? Well, first, if I may, my name is Shelley Clemons, and I'm an assistant United States attorney for the District of Arizona. And the reason why this Court should not dismiss this conviction based on a decision that was made before or even remanding is because the defendant fails in its burden to show prejudice. The government has conceded in its briefing that in fact there were errors. Well, they never had a chance to show prejudice because they didn't have a chance to litigate those errors. That is true, Your Honor. However, at this point... Therefore, that doesn't solve the problem. Yes, Your Honor, but that's exactly what happened. And what typically happens in the proceedings where there is an error that occurs, the aliens are not put in a position where they can make the record to support the relief that they were claiming. I do not think this is a terrible argument. I'm sorry, Ms. Clemons. I'm just going to say it. Ms. Clemons, you've made a big show of the prejudice. Ms. Clemons, you've had a chance to review, I imagine, the record here. Do you think the IJ was correct in her decision-making? I do believe the IJ was correct in the ultimate decision that the defendant was deportable based on his criminal record, which would outweigh any grounds for discretionary relief. Do you think the IJ was correct for the reasons that she stated with respect to why he was not eligible for cancellation of removal? No, Your Honor, and we've conceded that. Okay. So, with that concession, let me just maybe highlight again the question that Judge Berzon asked. Would you be amenable to mediation in this case? I guess I'm supposed to say yes. However, the government is saying no. Well, what's your best argument for saying no? Because you say that there's other reasons beyond the fact that the immigration judge was wrong here that he should go forward with under a 1326 indictment. Can you please lay that out for me? Yes, Your Honor. Again, we have conceded that there were errors. However, the fact that there were errors within the immigration proceedings does not necessarily mean that the removal becomes invalid. Why was it valid? It was valid, Your Honor, because he was a removable defendant based on his criminal history. How do we know that? He was convicted of a crime of moral turpitude. Who made that determination? Judge Ho did. The immigration court judged him. Okay. Which crime is the crime involving moral turpitude? The retail theft, which is, I believe, documented in paragraph 16. That was not a lawful determination. The moral turpitude exception says that if you're, I believe I read correctly, that if you're sentenced to a six-month period or less, then there's an exception, and you cannot accept this predicate for the fact that you were moral turpitude. He was sentenced to four and five days in jail for stealing two socks. That is correct, Your Honor. But it doesn't make sense at all. She claims six to three years in prison. So how are you here standing? If that's your strongest argument, I think you're in trouble here. However, the government has another argument. Why? Tell me about that other argument. Your Honor, in addition to the, again, the violation of objective order does not constitute an aggravated felony. However, under 8 U.S.C. 1229C, I believe it is, it is a deportable offense. It's considered to be a domestic violence offense, and the fact that it's a violation of objective order that prohibits the harassment and threatening of the victim. But there was a problem with the domestic violence conviction as well. There was not a problem with the conviction. It was just not an aggravated felony, which is the error that the court made. Anybody charged with deportability for that reason? No. And NTA does not show that as ground. That is correct. Okay. What's your best argument? Your Honor, the best argument in this case is that when the court made its ruling, it weighed in and switched court. The immigration court made its ruling. It based its ruling on its criminal history. It found that he was deportable, and then it found that in its discretion, Even if he was eligible, you're still talking about these two convictions that have some problems with them. Is that what you're talking about? That's correct. However, there's certainly other criminal history that occurred prior to the 2011 bill. I don't know if it was that woman named Judy Kane who was flushed out, but you know what really troubles me is that this person is sitting in jail for probably a crime for which he should not have been convicted. That just troubles me, and I don't know what to do with that. Well, the government, first of all. And the U.S. Attorney's Office in San Diego seemed to identify these issues. It's interesting that the U.S. Attorney's Office, especially now at this point, is standing firm despite the history. Because you're very well aware of what happened in the Southern District of California. Yes, we are. But we would note that in the Southern District of California, first of all, the government never went on the record and said, well, they admitted in sentencing, for purpose of a sentencing enhancement, that the immigration court judge was wrong when she called his prior violation to check the order charging a greater felony. They never conceded that he was not removable or deportable. Yes, the government did take a conservative approach, and they chose not to litigate the 1326D collateral attack that was filed in the court. Even if you're not bound by it technically, legally, why wouldn't you follow that same path here? Because the government — Because there's sufficient basis, equitably, certainly, to consider that path. The U.S. Attorney's Office in California, it appears to have a very conservative approach, but they never conceded the issue in front of the court for the purposes of the attack on the — the collateral attack on the deportation proceeding. And I think that the government is in a unique position of trying to do substantial justice, but necessarily relying upon, well, for lack of a better word, the technicality of the law. And do you think you really have reached that level of discharging your own variety of responsibilities that there's substantial justice under there? So, I don't have any concerns in this particular case. Yes, Your Honor, we do. In this particular instance, we do have an immigration proceeding that, yes, while it does have errors, the government does not believe that there was prejudice shown as efficient, but it's really overturned. I want to step back for a moment. I understand that this demand keeps coming back. So, you can have a new charge, the DHS can remove all charges against you and have a proper hearing as to a recent removal, and then you would have a proper removal. But they keep reinstating the same old one that has all these problems, and then you prosecute them based on the same old one that has all these problems, and it is fixable, it just isn't being fixed. And it may well be that the term of imprisonment somehow is correlated to these mistakes, and it just strikes me as something fundamentally wrong here in terms of your variety of responsibilities of the government to rise to a higher level of comfort. Well, I guess at this point that what I see the court is doing is almost putting the government in the position of defense counsel. In this particular instance, the government in the District of Arizona took a different position that the government counsel did in the District of Southern California. We did not necessarily agree with their position. But you agree that neither of the identified crimes were proper removal crimes. There might be other ones, but the two that were identified were not proper. One was not an aggravated felony. The other one was probably not a crime of moral prejudice. Right. So the only possible issue about prejudice, well, the more thing is maybe it wasn't removable at all, or maybe with regard to relief, the only possible argument is that with regard to relief, he wouldn't have gotten the relief, but we haven't litigated that. That is correct, Your Honor. It's not litigated here. It was not litigated in front of the district court as well. Of course it wasn't, because she didn't let him open his mouth. However, he was represented by defense counsel, and as the court in U.S. v. Bergman said, the court is not bound by the arguments of pro se counsel. As pointed out, he took the argument. But he didn't take the argument to the degree of letting him go forward with it. He said, he said, I don't, he said, he said it correctly. That's not a problem here. And he was wrong about that. However, again. Well, in the district court, he knew this individual was represented, so I think he was going to look toward his counsel to represent him. So I understand maybe why he didn't give complete attention. But still, it was raised sufficiently, and that's what we have to determine at this point. And then determine what the past order is. Was there any other removable, removal order other than the 2001 that you could have relied on? No, Your Honor. The remaining removable orders were all reinstated to the prior removal. I'm trying to say it would have been removable anyway, just because it was there illegally in the first place. That is correct, Your Honor. Maybe yes, maybe no. But you could still charge a 1325. That is correct, Your Honor, we could. And that's what's fascinating within your discretion that you have chosen, perhaps, not to do that. Okay. Interesting. I think that was close. I have one more question. It somewhat bothers me on the record whether, were you the U.S. attorney in the district court? No, I was not, Your Honor. Whether the people who were doing the prosecution in Arizona actually knew this history, or if they didn't, they should have, but if they didn't and didn't tell the judge, it's very disturbing. Do we have any idea whether that's true? Your Honor, again, from the defendant's pro se statements that he made in court, apparently there was some history raised. No, I don't mean that. I mean, did he actually know when he went forward with this prosecution? Why did it happen in California? I do not know the answer to that question, Your Honor. Did he already be told of that? That is correct, Your Honor. Okay, thank you. Commissioner, let's move on to the next question. Okay, I do have one more question. You never quite answered the mediation question. You said something like we don't like it or something, but occasionally our mediators actually are successful in criminal cases. If the court orders this case for remediation, we would, of course, have thoughtfully and fully participated. Well, what we do is we have, as I understand it, there is some disagreement about this, but we don't order you to mediate. First of all, it's too much work. This is not going to work. And second of all, I don't think we have the authority, but what we do have is the authority to order you to talk to the mediators about whether you should mediate. Okay. And it's usually a challenge, an exploratory challenge. Okay, thank you. I guess to respond to that question, given some of the defendant's statements that were made in court, as well as the statements to his defense counsel, I'm not sure mediation would be relevant in this case because the only thing the defendant seems to think is that he should be here legally and that he was found to be here legally because his removal order was found invalid. You don't have to mediate about that because you're the U.S. Attorney. You're not there. Yeah. Thank you. Okay, thank you both. I guess if you noticed, Jase, you were searching his statement.
judges: Berzon, Murguia, Block